[Civ. No. 2805. Second Appellate District, Division One.—January 27, 1919.]

SAM MOCH et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Juvenile Court Law—Proceeding to Free Infant from Custody of Parents—Intent to Abandon—Judgment not Final.—In a proceeding under section 15 of the "juvenile court law" (Act 1770a, Deering's General Laws) to declare an infant free from the custody and control of her parents, where the answer of the mother traverses the allegation of the petition that her relinquishment of the child was "with the intent to abandon" it, a so-called judgment which ordered that so far as the father is concerned the child comes within the meaning of said section 15, and is "adjudged" to be free from the custody and control of said father, but which, without passing or finding upon the questions of the mother's intention to abandon

the child and persisting in that intention for a year after her execution of a relinquishment of the child, purported to order that so far as the mother is concerned "said petition is hereby ordered dismissed," is not a final judgment, in that it does not determine on the merits the issues which were presented to the court for determination.

Id.—Dismissal, Effect of.—The use of the word "dismissed" in such case is not determinative of the question whether or not such purported judgment was an adjudication of the merits of the controversy, which question is to be determined by a consideration of the entire "judgment," together with the pleadings and findings in the light of the provisions, scope, and apparent purpose of the juvenile court law.

Id.—Case at Bar—Issue Involved—Status of Child.—The question the juvenile court was called upon to adjudicate and determine in the case at bar was the status of the child, whether it was a child subject to the parents' custody and control, or free therefrom.

Id.—Freedom from Parental Control — Intent to Abandon.—The law having defined a person, who should be declared free from the custody and control of his parents as "one who has been left in the care and custody of another by his parent or parents, without any provision for his support, or without communication from such parent or parents for the period of one year, with the intent to abandon such person," the intent is the decisive factor.

Id.—Mother a Ward of Juvenile Court — Effect on Purpose to Abandon Child.—Neither the circumstance that the mother has been adjudged a ward of the juvenile court, nor that she is deprived of her liberty, would have any necessary effect upon her purpose to abandon her child, if she held such purpose, nor would it prevent her from manifesting a change of such purpose, if she experienced such change.

Id.—Jurisdiction.—Neither of those circumstances had the effect of depriving the juvenile court of jurisdiction to hear and determine the matter of freeing the child from parental custody and control.

Id.—Failure to Provide—Presumption.—Failure of a parent to provide for a child for a period of one year does not operate to constitute the child an abandoned child; it is merely presumptive evidence of an intent to abandon and the presumption thus created may be overcome by opposing evidence.

Id.—Appeal—Limitation on Right of Appeal.—The right of appeal under the juvenile court law is restricted to appeals from judgments and orders enumerated in section 23 of that act.

Id.—Intentional Omission to Find on Material Issue—Mistaken Conception by Court of Its Jurisdiction—Judgment Nonappealable.—Where, as in the case at bar, it is apparent that the trial judge purposely refrained from finding upon the material issue of

the intent of the mother to abandon her child because of his opinion that he was precluded from so doing, either by the circumstance that the mother was then a ward of the juvenile court, or by the fact that she was then restrained of her liberty and confined in a state institution, or by the fact that she had been so confined continuously from a point of time within less than a year after she had executed an instrument of relinquishment of her parental rights over the child, it is the conclusion of the appellate court that the trial court declined to proceed and determine the issues submitted to it upon their merits, solely because of a mistaken conception of its jurisdiction or authority in the premises, and no appeal lies from a judgment of dismissal so rendered by the trial court.

ID.—MANDAMUS—DEMURRER TO PETITION.—In such case a demurrer to a petition for a peremptory writ of mandate will be overruled and the writ issued as prayed for.

ID.—EFFECT OF WRIT AS ANNULMENT OF JUDGMENT.—The circumstance that the issuance of a peremptory writ of mandate will have the incidental effect of annulling (without a writ of *certiorari*) the judgment of dismissal is no ground for denying it.

APPLICATION for a peremptory Writ of Mandate to require the Superior Court of Los Angeles County, and Hon. Sidney M. Reeve, Judge thereof, to proceed with the hearing and determination of a proceeding before it under section 15 of the juvenile court law.    Granted.

The facts are stated in the opinion of the court.

Hunsaker, Britt & Edwards for Petitioners.

A. J. Hill, County Counsel, Vincent Morgan, Deputy County Counsel, and Argabrite & Drapeau for Respondents.

MYERS, J., *pro tem.*—This is an application after notice for a peremptory writ of mandate to require the respondent, sitting as a juvenile court, to proceed with the hearing and determination of a proceeding before it under section 15 of the juvenile court law. (Act 1770a of Deering's General Laws, p. 747.)    There is no controversy as to the facts and the matter is submitted upon the petition for the writ and general demurrer thereto.

The petitioners herein filed their petition in said juvenile court November 30, 1917, to have one Donna Spencer Lee, an infant child, declared free from the custody and control of her parents, as provided in said section 15 of said act.

It was alleged that petitioners had received said child July 27, 1916, from the Children's Home Finding Society and had ever since kept and maintained her in their home; that the father had abandoned said child and its mother shortly after the birth of the former and had never contributed anything to its support; that on May 27, 1916, the mother, "with the intention of then and there abandoning, relinquishing, and surrendering her infant child," signed and executed a written relinquishment of the child to Mrs. Porter, a probation officer, and then left said child in the care and custody of said Mrs. Porter without any provision for its support, since which time she has never contributed in any manner to the support or maintenance of said child; that said mother was, on or about October 18, 1916, committed to the State School for Girls, at Ventura, California, as a ward of the juvenile court, where she has since remained; that said petitioners were desirous of adopting said child and therefore prayed for an order of court adjudging said child free and clear of the custody and control of her parents.

A citation to the parents of the child was duly issued and served, in response to which the mother, Donna Lee, appeared and filed her answer. She alleged that she had supported said child until she (the mother) was declared a ward of the juvenile court, since which time she had been unable to do so by reason of her confinement under order of that court. She admitted the execution of the written relinquishment alleged in the petition, but denied that it was with the intention of abandoning or relinquishing or surrendering said child. She alleges that it was signed and acknowledged by her without understanding of its meaning or effect, and she disavows it and asks to have it canceled.

The father, James Lee, defaulted and a trial was had upon the allegations of the petition and answer above mentioned, and, upon evidence presented by both parties, the matter was submitted. The trial judge signed and filed "findings of fact and conclusions of law" and a "judgment." He found all of the facts which were admitted by the pleadings and, upon issues framed by the pleadings, he found certain of the probative facts, but none of the ultimate facts. He found that the written relinquishment was executed by the mother, as alleged in the petition, and that it was revoked by her at the time of filing her answer, but not prior thereto. Peti-

tioners contend that from this probative finding the ultimate finding of *abandonment* should be deduced. But, on the other hand, the court found "that said Donna Spencer Lee was, on the fifteenth day of February, 1916, left with Mrs. Earl Meanor by said respondent under an oral agreement to compensate said Mrs. Meanor for its care and custody and that said oral agreement has never been revoked by said respondent." Counsel for the respondent here argue that from this latter finding we should deduce the ultimate fact that the child was never abandoned by its mother. The crucial issues in the case were the questions whether or not the relinquishment was executed by the mother with the *intention of abandoning* the child, and, if so, then, whether or not such intention persisted for a period of one year thereafter. Upon these issues the court made no finding.

In its conclusions of law and judgment the court "ordered that said child, in so far as James Lee, the father, is concerned, is a person coming within the meaning of subdivision 15 of the Juvenile Court Law, . . . and is adjudged to be free from the custody and control of said James Lee, but that said petition is prematurely filed, in so far as it applies to said respondent Donna Lee, in accordance with the provisions of section 6 of the Juvenile Court Law, in that the said Donna Lee has been a ward of the Juvenile Court since the 6th day of September, 1916, and has by order of this court been deprived of her liberty since that date and confined in the California School for Girls at all times since the 13th day of April, 1917, and that, therefore, said petition is hereby ordered dismissed, in so far as the respondent Donna Lee is concerned." (We have not been advised by counsel nor have we succeeded in determining the relevance of said subdivision 6 to the matters here under consideration.)

Counsel for the respondent take the position that this judgment was a determination of the merits of the proceeding upon the evidence submitted to the court, and that, therefore, nothing remains to be done by that court which can be required to be done by a writ of mandate; and, second, that it constitutes a final judgment in a special proceeding from which an appeal is provided for by subdivision 1 of section 963 of the Code of Civil Procedure.

In considering the question whether or not this judgment was an adjudication of the merits of the controversy, it must be

conceded that the use of the word "dismissed" is not determinative. The cases are not rare wherein judgments or orders purporting to be merely "dismissals" have 'been held to be final adjudications upon the merits. This question is to be determined, not on the basis of any single word or phrase used, but upon a consideration of the entire "judgment," together with the pleadings and the findings, in the light of the provisions, the scope and the apparent purpose of the juvenile court law. It is evident that one of the purposes of this law is to provide the machinery and prescribe the procedure by which the state may assume control of those unfortunate children who, by reason either of financial incapacity or moral unfitness of their parents, should, for their own welfare, be removed from the parental custody. (*Matter of Guardianship of Michels,* 170 Cal. 339, 342, [149 Pac. 587].) And so it named the forum and prescribed the conditions under which and the procedure by which such a child could be judicially determined to be free from the custody and control of its parents. It is equally apparent upon consideration that this forum and this procedure were not designed for adjudication and determination as between the two parents of a child as to which one of them was entitled to its custody. That which the juvenile court was here called upon to adjudicate and determine was the status of the child; whether it was a child *subject* to the parental custody and control, or *free* therefrom.

The question here is, Has the court in this proceeding adjudicated the status of the child Donna Spencer Lee? For the purposes of this case we may assume, without deciding, that it has done so, so far as the father is concerned. With respect to the question of the parental rights of the mother, could this judgment be successfully interposed as an estoppel? We think not. The law defines a person who should be declared free from the custody and control of his parents as one "who has been left in the care and custody of another by his parent or parents, without any provision for his support or without communication from such parent or parents for the period of one year, *with the intent to abandon such person.*" The italics are ours, but it is clear that the *intent* is the decisive factor, and it has been in effect so held. (*In re Cordy,* 169 Cal. 150, [146 Pac. 532, 534]; *Guardianship of Snowball,* 156 Cal. 240, [104 Pac. 444]; *Matter of Schwartz,* 171 Cal. 633, [154 Pac. 304].) The allegation of the inten-

tion to abandon was the one vital allegation of the petition which was traversed by the answer; but upon that issue the court made no finding. It is apparent that this omission was intentional and that the trial judge purposely refrained from finding upon this issue because of his opinion that he was precluded from so doing, either by the circumstance that the mother was then a ward of the juvenile court, or by the fact that she was then restrained of her liberty and confined in a state institution, or by the fact that she had been so confined continuously from a point of time within less than a year after the execution of the relinquishment above referred to. Counsel have not furnished us with either reason or authority for concluding that either of these circumstances would have the effect of depriving the court of jurisdiction or authority to proceed with the hearing and determination of this matter. This was a special proceeding, neither criminal nor *quasi*-criminal in its nature. The juvenile court law contains no provision for an exception in the case of a parent so restrained. Neither do we find any provision in the codes or general laws which either directly or by implication would render such a situation a ground for abatement of the proceeding. Neither the circumstance of the mother being adjudged a ward of the juvenile court, or deprived of her liberty, would have any necessary effect upon her purpose to abandon her child, if she held such purpose; nor would it prevent her from manifesting a change of such purpose if she experienced such change. The court found that after this proceeding was instituted, the mother revoked the relinquishment theretofore executed by her. If she could revoke it then, she could have done so sooner. A failure to provide for a period of one year does not operate to constitute the child an abandoned child. It is merely "presumptive evidence of an intent to abandon." The presumption thus created could, therefore, be overcome by opposing evidence, and when it is made to appear that the failure to provide was by reason of inability to do so, less evidence than under other circumstances would naturally be required to overthrow such presumption. But the crucial question, the question of the existence and of the persistence for a year *of an intent to abandon,* is at all times a question of fact upon which it is the duty of the trial court in such proceeding to find. We conclude, therefore, that the judgment here in question is not a final

judgment, and that it did not determine on the merits the issues which were presented to the court for determination.

It follows, then, that the writ should issue, unless the petitioners have some other plain, speedy, and adequate remedy. In this connection the respondent contends that a right of appeal is provided by section 963, subdivision 1, of the Code of Civil Procedure, which provides for an appeal "from a final judgment entered in an action, or special proceeding, commenced in a superior court." While we have concluded that the judgment in question was not a final judgment in the sense of an adjudication on the merits of all the questions there submitted to the court, nevertheless it did finally dispose of that case, so far as that court was concerned; so that it must be regarded as a final judgment, so far as the question of the right of appeal is concerned. (*Saul* v. *Moscone*, 16 Cal. App. 506, [118 Pac. 452]; *Wood* v. *Missouri etc. Ry. Co.*, 152 Cal. 344, 347, [92 Pac. 868].) This is admittedly a special proceeding of a civil nature, and if there were no provision respecting appeals in the juvenile court law itself, we should hold the provision of section 963 above quoted applicable thereto, under the authority of *People* v. *Bank of San Luis Obispo*, 152 Cal. 261, [92 Pac. 481]. But that act does contain such a provision. Section 23 thereof provides: "Every judgment or decree of a juvenile court assuming jurisdiction and declaring any person to be a ward of the juvenile court or a person free from the custody and control of his parents may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment." This presents an apt situation for the application of the maxim, *Expressio unius est exclusio alterius.* No other conclusion may reasonably be drawn therefrom than that the legislature did not intend thereby to provide for appeals from judgments and orders within the scope of that act other than those there enumerated. (*Peralta* v. *Castro*, 15 Cal. 511; *Frandzen* v. *County of San Diego*, 101 Cal. 317, 321, [35 Pac. 897].)

It is our conclusion, therefore, that the court below, having jurisdiction of the subject matter and of the parties, declined to proceed and determine the issues submitted to it upon their merits, solely because of a mistaken conception of its jurisdiction or authority in the premises, and that no appeal lies from its judgment so rendered. "Under such circumstances the

court cannot, by holding without reason that it had no jurisdiction of the proceeding, divest itself of jurisdiction, and evade the duty of hearing and determining it." (*Temple* v. *Superior Court,* 70 Cal. 211, [11 Pac. 699].) The circumstance that the issuance of the writ prayed for will have the incidental effect of annulling (without a writ of *certiorari*) the judgment of dismissal, is no ground for denying it. (*Golden Gate Tile Co.* v. *Superior Court,* 159 Cal. 474, [114 Pac. 978].)

Let the writ issue as prayed for.

Conrey, P. J., and James, J., concurred.