[Civ. No. 16071. Third Dist. Aug. 16, 1978.]

In re TERRY D. et al., Minors.
BUTTE COUNTY DEPARTMENT OF SOCIAL WELFARE,
Petitioner and Respondent, v.
ORA D., Objector and Appellant.

892

COUNSEL

Don E. Bennett, under appointment by the Court of Appeal, for Objector and Appellant.

Daniel V. Blackstock, County Counsel, and James R. Griffith, Deputy County Counsel, for Petitioner and Respondent.

OPINION

**REGAN, J.**—In this proceeding by the Butte County Department of Social Welfare to have six minor children declared free from parental custody and control pursuant to Civil Code section 232, subdivisions (a)(2) and (a)(7), the trial court granted the petitions (which have been consolidated for trial) and appointed the Children's Home Society of California as being guardian under the provisions of section 239 of the Civil Code. The natural mother (Ora) appeals.

The parties stipulated that the six children are the children of Ora D. and Joseph D; that the birthdate of the oldest of these minors is December 23, 1967, and of the youngest April 6, 1974; that the five oldest had been dependent children of the juvenile court since March 15, 1973, their parents having been deprived of their custody since that date; that the youngest had been a dependent child of the juvenile court and his parents deprived of his custody since July 11, 1974; and that all of the children, with the exception of the youngest, had been cared for in one or more foster homes under the supervision of the juvenile court for more than two consecutive years. This allowed the five eldest to be considered under Civil Code section 232, subdivision (a)(7), while the youngest fell under subdivision (a)(2).

The factual issues as to the five older children were: (1) whether their return to their parents would be detrimental to them; and (2) whether the parents had failed during the period of the foster care and were likely to fail in the future to provide care and control for the five, and to maintain an adequate parental relationship with them. (See Civ. Code, § 232, subd. (a)(7).)

The record is replete with testimony by social workers and other professionals as to the history of work with the parents going back over 10 years, and that although public funds and assistance were made available to them, the food, clothing and sanitary conditions, as well as lack of medical and dental care, afforded to the children by the parents were a source of constant concern.[1] Moreover, a psychologist's testimony was to the effect that because of factors of mental retardation, psychotic thinking and probable brain damage, Ora would not likely be able to manage the care and supervision of the children or to maintain an adequate parental relationship. The psychologist's prognosis as to Ora was that she would not improve in this regard with or without treatment. Also, the record of visitations of the parents to the children while in foster care was poor.[2]

Subdivision (a)(7), as it read in 1975 at the time of the hearing, applied to children who have been in foster homes for two or more years; it allowed a freeing from parental custody where the court found *beyond a*

---

[1]The children were naked part of the time, and a dentist testified that dental neglect of some of the children was so bad it was "a form of child abuse."

[2]Civil Code section 232, subdivisions (a)(2) and (a)(7) read as follows at the time of the hearings:

"(a) An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions:

"(2) Who has been cruelly treated or neglected by either or both of his parents, if such person has been a dependent child of the juvenile court, and such parent or parents deprived of his custody for the period of one year prior to the filing of a petition praying that he be declared free from the custody and control of such cruel or neglectful parent or parents.

"(7) Who has been cared for in one or more foster homes under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for two or more consecutive years, providing that the court finds beyond reasonable doubt that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future, to

"(i) Provide a home for said child;

"(ii) Provide care and control for the child;

"(iii) Maintain an adequate parental relationship with the child.

"Physical custody of the child by the parent or parents for insubstantial periods of time during the required two-year period will not serve to interrupt the running of such period."

At the 1976 session of the Legislature, the requirement of a finding "beyond reasonable doubt" in subdivision (a)(7) was changed by amendments (effective Jan. 1, 1977) to a requirement of finding "by clear and convincing evidence." (Stats. 1976, ch. 653; Stats. 1976, ch. 940.) At the 1977 session the changes in standard of proof were taken out and proof beyond a reasonable doubt is again required. (Stats. 1977, ch. 1252, operative July 1, 1978.)

*reasonable doubt* that return to the parents would be detrimental and that the parents had failed for such period, or were likely to fail in the future, to provide a home, care, control and maintain an adequate parental relationship. With respect to the sixth and youngest child (who was about 14 months of age when the petition was filed), the allegation was a simple allegation of "neglect" by the parents and that the child is a dependent child of the juvenile court not in parental custody; this ground for a court decree permanently freeing a child from custody and control of its parents is provided for in Civil Code section 232, subdivision (a)(2).[3]

Ora contends the preponderance of the evidence standard of proof[4] applicable to Civil Code section 232, subdivision (a)(2), is "inappropriate" and that proof beyond a reasonable doubt should be required, or at least "clear and convincing evidence." Ora also contends the application of a preponderance of the evidence test to Civil Code section 232, subdivision (a)(2), while a more stringent standard (proof beyond a reasonable doubt) is required under Civil Code section 232, subdivision (a)(7), is a violation of equal protection of the laws and thus unconstitutional.

We consider the constitutional question first. There are two standards of review applied by the courts in equal protection questions. The first or conventional standard requires only that differential treatment of classes of individuals has some "reasonable basis" or bears " 'some rational relationship to conceivable legitimate state purpose.' " (*Schwalbe* v. *Jones* (1976) 16 Cal.3d 514, 517-518 [128 Cal.Rptr. 321, 546 P.2d 1033]; *Dandridge* v. *Williams* (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 501, 90 S.Ct. 1153].) A second test or standard has been developed by the courts to be applied to a classification drawn along lines which rendered it "suspect" in constitutional terms or which touched a "fundamental interest." These are generally matters such as race, sex or "rights explicitly or implicitly guaranteed by the constitution." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 17-18 [112 Cal.Rptr. 786, 520 P.2d 10].) In such case strict scrutiny is required and the state bears a burden of establishing that it has a "compelling interest" which justified the law and that the classification is necessary to further that purpose or interest. (*San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 33 [36 L.Ed.2d 16, 43, 93 S.Ct. 1278]; *D'Amico* v. *Board of Medical*

---

[3]See footnote 2 for text of Civil Code section 232, subdivisions (a)(2) and (a)(7).

[4]See Evidence Code section 115, providing for such a standard of proof whenever a different standard is not provided by law.

*Examiners, supra,* 11 Cal.3d at p. 17; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)

We are not dealing with classifications based upon suspect areas such as race, sex or any rights explicitly or implicitly guaranteed by the constitution. We do not believe the strict scrutiny test need be applied; but even if we apply it, for purposes of argument only, it can be said that the state has a compelling interest which justified the statute, and the classification is necessary to further that purpose or interest. The courts have held, with specific respect to Civil Code section 232, that the goal of the section is to promote the welfare of the child; and the state as a *parens patriae* not only has a "compelling interest" but also has a "duty" to sever parental bonds once a situation contemplated by the statute arises. (*In re Eugene W.* (1972) 29 Cal.App.3d 623, 629 [105 Cal.Rptr. 736].) Under this concept, a classification made under Civil Code section 232, subdivision (a)(5), relating to mentally ill parents was held valid against a classification challenge, but the court felt it need only apply the reasonable basis rather than the strict scrutiny or compelling state interest standard. (*In re Eugene W., supra,* 29 Cal.App.3d at pp. 627-628.)

█ In the present case, the rational basis for distinguishing between situations falling under Civil Code section 232, subdivision (a)(2) and subdivision (a)(7), for purposes of different standards of proof, is the important distinction that the former section involves finding of the simple and single concept of cruel treatment or neglect, while the latter involves findings of *detriment* to the child by return to his parents *plus* findings that the parents have failed for two or more years and are *likely* to fail in the future to (a) provide a home, (b) provide care and control, and (c) maintain an adequate parental relationship. These findings are different in all phases of kind, quality and degree from the simple findings required under subdivision (a)(2). To require a higher standard of proof (beyond a reasonable doubt) for these more serious and complex findings is in our view entirely reasonable and rational and within the orbit of the proper exercise of legislative judgment and wisdom in making a classification within the equal protection clauses of the United States and California Constitutions. (See *In re Rose G.* (1976) 57 Cal.App.3d 406, 420 [129 Cal.Rptr. 338].)

Moreover, as argued by counsel for the Butte County Department of Social Welfare, the more stringent standard of proof is a protection to the parents, while the most basic purpose of the statute is to protect children, and it could therefore be said that *if* any denial of equal protection were

to be found, the more demanding standard of Civil Code section 232, subdivision (a)(7), should be reduced to the "preponderance" standard so that children who are the subjects of that subdivision are not denied "equal protection" relative to those children who are subjects of proceedings under subdivision (a)(2).

In this connection, we note that any seeming incongruity in the use of a preponderance of the evidence burden of proof in one portion of Civil Code 232 when the proof beyond a reasonable doubt test is used in another portion, may be explained by the fact that this unique section of the statutory law has evolved out of long-established concepts that proceedings under juvenile court laws to free children from the custody of their parents are "special proceedings." (*Moch* v. *Superior Court* (1919) 39 Cal.App. 471, 477 [179 P. 440]; *In re Peterson* (1943) 56 Cal.App.2d 791, 795 [133 P.2d 831].)

We conclude that the legislative distinction or classification, as to standards or burdens of proof between those cases falling within Civil Code section 232, subdivision (a)(2), and those under subdivision (a)(7) is constitutionally sound, whether the classification be in terms of the statute as it read at the time this case was decided, or after the effective date of the 1976 amendment.[5]

We turn now to Ora's arguments that, aside from constitutionality, the preponderance of evidence test is an "inappropriate standard of proof" for termination of child custody under Civil Code section 232, subdivision (a)(2). Here we are in the arena of policy, but not properly judicial policy. The matter is one for the Legislature. Ora refers to treatises, such as *State Intervention on Behalf of "Neglected" Children,* by Michael S. Wald, 28 Stan. L. Rev. 625, and to court decisions, such as *In re T. M. R.* (1974) 41 Cal.App.3d 694 [116 Cal.Rptr. 292], which suggest the often traumatic ramifications of removal of a child from custody of its parents. We are aware of these ramifications and the many problems which exist. However, these are social problems which the Legislature has attempted to deal with over the years as it deems best, attempting to balance the interest of the children with that of the parents.

Looking at the matter from a strictly legal standpoint, as is our posture with respect to this issue, we ordinarily would have found no violation of judicial powers and no abuse of judicial discretion in the trial court's

[5]See footnote 2, *ante.*

application of the preponderance of the evidence test to the question of parental "neglect," (as specifically stated in the court's findings of fact) under Civil Code section 232, subdivision (a)(2). (See *In re Rose G., supra,* 57 Cal.App.3d at p. 420.)

However, we are confronted by recent decisions of the California courts and others, which cast serious doubts on the propriety of the preponderance of the evidence test in such matters.

In *In re B. G.* (1974) 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244], the court was dealing with the question of what showing must be made under Civil Code section 4600 (allowing a court to award custody of a child to a nonparent against the claim of a parent). The court held that section 4600, which does not prescribe a standard or burden of proof, permits an award of custody to a nonparent only upon a "clear showing" that such award is essential to avert harm to the child. (11 Cal.3d at pp. 698-699.) This holding was in reference to language in section 4600 stating that the juvenile court must make a finding that " 'an award of custody to a parent would be detrimental to the child.' " (11 Cal.3d at p. 698.) The term "clear showing" employed by the court is not precisely the same as stating that there must be clear and convincing evidence rather that a preponderance of the evidence, but when read in the context of the decision, the meaning becomes essentially the same as a practical matter. We see a compelling analogy to the case before us. Here, we are dealing with a statute which, although it does not directly award custody to a nonparent as against the claim of a parent, has the effect of leading to an even more permanent severance of parental ties. Section 232, subdivision (a)(2), is the preliminary adoption proceedings in many instances. The children it is concerned with have already, in previous proceedings, been temporarily removed from the custody of their parents and have been made dependent children of the juvenile court. (See also Welfare and Institutions Code section 300 providing for a judicial determination that a child is a dependent child of the court for various reasons such as parental cruelty or neglect, as specified in Civil Code section 232, subdivision (a)(2).)

As we said in the recent case of *In re Christopher B.* (1978) 82 Cal.App.3d 608, 616-618 [147 Cal.Rptr. 390], the preponderance of the evidence test must be used at the dependency hearing, and a clear and convincing proof test is required to take custody from the parent.

In *Alsager* v. *District Court of Polk County, Iowa* (S.D. Iowa 1975) 406 F.Supp. 10, the court held unconstitutional a parental termination statute which required a mere preponderance of the evidence. The court said maintenance of the integrity of the family unit is a fundamental liberty and privacy interest, protected by the due process clause of the Fourteenth Amendment.

Therefore, we hold a determination under Civil Code section 232, subdivision (a)(2), requires a standard of proof by clear and convincing evidence. (*In re B. G., supra,* 11 Cal.3d at pp. 698-699; Civ. Code, § 4600.)

■ Ora contends the evidence does not support the findings when the "clear and convincing standard" of proof is applied. On appeal, the substantial evidence rule applies to the clear and convincing standard of proof the same as in other cases. (See Witkin, Cal. Evidence (2d ed. 1966) Burden of Proof and Presumptions, § 209, pp. 190-191; *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480]; *Cecka* v. *Beckman & Co.* (1972) 28 Cal.App.3d 5, 14 [104 Cal.Rptr. 374].) The courts have defined clear and convincing evidence as evidence which is so clear as to leave no substantial doubt and as sufficiently strong to command the unhesitating assent of every reasonable mind. (*Sheehan* v. *Sullivan* (1899) 126 Cal. 189, 193 [58 P. 543]; see also Witkin, *op. cit., supra,* at p. 190.) It has been said that a preponderance calls for probability, while clear and convincing proof demands a *high probability.* (See McBaine, *Burden of Proof: Degrees of Belief* (1944) 32 Cal.L.Rev. 242, 260-262; McBaine, *Burden of Proof: Presumptions* (1954) 2 UCLA L.Rev. 13, 17-18; cf. Evid. Code, §§ 115, 502, recognizing the distinction but not defining the terms.)

Referring to our summary of facts in the light most favorable to the prevailing party (the department) we would be constrained to hold, had the trial court applied the "clear and convincing" standard of proof, that there is substantial evidence to support the findings and the judgment and therefore the determination of the trial judge on conflicting evidence would not be disturbed on appeal. (See Witkin, *op. cit., supra,* at p. 190.) However, we are not in position to assume that the trial court would make the same findings under Civil Code section 232, subdivision (a)(2), of "neglect" which it made using the preponderance of the evidence test. Accordingly, we must afford the trial court an opportunity to reappraise the evidence with respect to its findings numbers 9 and 10, wherein it found "by a preponderance of the evidence" that Ora and her husband

(not a party to this appeal) had "neglected" all the children. (See Civ. Code, § 232, subd. (a)(2).) The court possibly would make a contrary finding under the "clear and convincing" standard of proof. We shall remand the matter for this purpose.

■ Ora contends the trial court erred in considering evidence of parental conduct before the five older children were placed in foster home care, as well as during the time they were in foster care, on the issues under Civil Code section 232, subdivision (a)(7), of whether return to the parents would be detrimental to the five children and whether the parents are likely to fail in the future to provide a home, care and control, and to maintain an adequate parental relationship. There is no problem of standard of proof beyond a reasonable doubt as provided in section 232, subdivision (a)(7). However, Ora argues that evidence on such issues should be limited to the period of time the children were in the foster home. These contentions and arguments are meritless.

The gist of Ora's argument is that Civil Code section 232, subdivision (a)(7), centers around the two-year foster home period as a condition precedent to the operation of the other provisions. The result of these arguments is a conclusion that the statutory language "have failed during such period [to provide a home and the like], and are likely to fail in the future," precludes the court from admitting and considering evidence of parental conduct before the children were placed in a foster home. Ora insists that the subdivision as a whole "centers around the two-year foster home period."

We disagree. Her arguments overlook or ignore the very significant statutory language in subdivision (a)(7) requiring the court to find that the parents have failed during the foster home period and "are likely to fail in the future . . . ." Past conduct is relevant on the issue of future fitness, although it is of course not controlling. (See *In re Cardenas* (1961) 194 Cal.App.2d 849, 855 [15 Cal.Rptr. 238]; cf. *In re T. M. R., supra*, 41 Cal.App.3d at pp. 701-703.) The statute is so written that the likely future conduct of the parents is not, and should not, be established only through occurrences during the foster care period. It tortures the language of the statute to say it is impossible under its language for a court to consider, as one factor, evidence of how parents related to and provided for their children in the past in determining how they might relate to and provide for them in the future.

The judgment is reversed and the matter is remanded to the superior court for the single purpose of reconsideration of findings numbers 9 and 10 in light of this opinion, applying the standard of clear and convincing evidence to the facts as developed in the previous hearings.

Puglia, P. J., concurred.

REYNOSO, J.—I dissent. Before children can be permanently taken from their parents, constitutional requirements of due process demand a showing of extreme neglect. We deal with a fundamental right on the part of parents to raise a family and on the part of children to be raised in a family setting. Further, the acts committed by the parents which permit the termination of parent-child relationship are otherwise defined as criminal acts. There is moral fault-finding implicit in such actions. Accordingly, the highest standard must be applied to the required proof before the parent-child relationship can be permanently severed; that is, there must be proof beyond a reasonable doubt. The trial court applied a preponderance of the evidence standard in making its determination as to five of the children, and I would therefore reverse the judgment as to those children. The trial court applied the appropriate standard in ruling on the matter of the youngest child, however I find that the evidence is insufficient to support the judgment as to that child and would accordingly reverse.

I. *Substantive Due Process Considerations*

"It is beyond peradventure that freedom of personal choice in matters of family life is one of the liberties protected by the Due Process Clause. Cleveland Board of Education v. LaFleur, 414 U.S. 632 (1974). Here we are concerned with the most essential and basic aspect of familial privacy—the right of the family to remain together without the coercive interference of the awesome power of the state. The right to preservation of family integrity encompasses the reciprocal rights of both parent and children." (Blumenfeld, J., in *Duchesne* v. *Sugarman* (2d Cir. 1977) 566 F.2d 817, 824.)

The majority reject appellant's equal protection arguments. However, I find that the due process arguments which the appellant makes to be persuasive. The majority ignore that argument.

There is a fundamental interest which goes to each member of the family protecting them from state interference in the familial relationship except in the most extreme circumstances. The United States Supreme Court has long protected that interest. (*Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558, 92 S.Ct. 1208].) The California Supreme Court agrees: "[T]he interest of the parent in the companionship, care, custody, and management of his children is a compelling one, ranked among the most basic of civil rights . . . ." (*In re B. G.* (1974) 11 Cal.3d 679, 688 [114 Cal.Rptr. 444, 523 P.2d 244].) And the permanent loss of that familial relationship by action of the state amounts to a deprivation of "liberty" under the due process clause. (*In re George G.* (1977) 68 Cal.App.3d 146, 165 [137 Cal.Rptr. 201]; *In re Rose G.* (1976) 57 Cal.App.3d 406, 421 [129 Cal.Rptr. 338].)

While the familial right is of a fundamental nature, the state has an interest, indeed a duty, to protect the young. (See *Stanley* v. *Illinois, supra,* 405 U.S. at p. 652 [31 L.Ed.2d at p. 559]; *In re Eugene W.* (1972) 29 Cal.App.3d 623, 629 [105 Cal.Rptr. 736].) The state interest protecting children must be balanced against the countervailing interest of the parent and child in maintaining the integrity of the family unit. (See *In re Lisa R.* (1975) 13 Cal.3d 636, 648 [119 Cal.Rptr. 475, 532 P.2d 123].)

The court's duty to balance those interests is not easily achieved for the interests, at times, are not that distinct. Thus, the state, too, has a duty to preserve and strengthen the family home. (See Welf. & Inst. Code, § 202.) In addition, the state may intervene on behalf of a child and temporarily remove the child from the parents in case of need to protect the child. (Welf. & Inst. Code, § 300, formerly § 600.) The more serious step, that of permanently depriving the parents and children of the familial relationship, must be analyzed with the interests of the state and the family in mind.

Let us proceed to the weighing. The state, it would appear, has a compelling interest only when neglect and detriment of the child exists in serious dimensions. But when can such circumstances arise? The beginning of our analysis is *In re B. G., supra,* 11 Cal.3d 679, where the court suggested that the practice of awarding custody to nonparents in preference to parents should be only under "unusual and extreme circumstances." This is in conformity with the notion that "the involuntary termination of that relationship by state action must be viewed as a

drastic remedy which should be resorted to only in extreme cases of neglect or abandonment." (*In re T. M. R.* (1974) 41 Cal.App.3d 694, 703 [116 Cal.Rptr. 292].)

The thrust of the cases which deal with the removal of children from their parental control pursuant to Civil Code section 232, subdivisions (a)(2) and (a)(7), convinces me that the familial relationship should be permanently severed only when there has been demonstrable extreme neglect. (See *In re D. L. C.* (1976) 54 Cal.App.3d 840 [126 Cal.Rptr. 863]; *In re Susan M.* (1975) 53 Cal.App.3d 300 [125 Cal.Rptr. 707]; *In re Halamuda* (1948) 85 Cal.App.2d 219 [192 P.2d 781].) In fact, the neglect must be of a criminal nature. Thus, in *In re D. L. C., supra,* 54 Cal.App.3d 840, the parent had already pled guilty to the crime of misdemeanor neglect of the child. Or, if we look at a criminal case, we find the appellate court, in upholding a conviction, stating: "This record discloses conditions of filth and wanton neglect which even the most ignorant and insensitive parent should recognize as hazardous to children." (*People* v. *Harris* (1966) 239 Cal.App.2d 393, 398 [48 Cal.Rptr. 677].) Extreme neglect, the *Harris* court said, is criminal. Extreme neglect, the cases dealing with Civil Code section 232, seem to say, is what warrants the severing of familial ties. That extreme circumstances amounting to criminal neglect must be proven before familial ties can be broken appears to be required constitutionally. Substantive due process requires that the state not act arbitrarily in contravention of fundamental liberties. (*Palko* v. *Connecticut* (1937) 302 U.S. 319, 327 [82 L.Ed. 288, 293, 58 S.Ct. 149].) A state act would be characterized as arbitrary and capricious if it permanently deprived the parent of the fundamental liberty of raising a family for mere neglect under Civil Code section 232, subdivisions (a)(2) or (a)(7). In like manner, interference with the fundamental liberty of a child to be raised by his or her parents cannot constitutionally be countenanced by a mere showing of neglect. To permit intervention for mere neglect would be to permit the state to interfere with impunity in the affairs of any family, for neglect is a human failing common to all of us. (See *In re B. G., supra,* 11 Cal.3d at p. 694.)

An infringement on a fundamental liberty, whether the infringement is labeled civil or criminal, requires a high degree of justification to satisfy due process. (See *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428].) Accordingly, in the context of Civil Code section 232, it is "extreme neglect" which must be shown.

## II. *Required Standard of Proof*

When a fundamental interest is at stake, the standard of proof which the state must satisfy is of the highest order. In a Civil Code section 232 proceeding, it must be proved beyond a reasonable doubt. To be deprived of one's child or one's parent is an intervention far more serious than the intervention which sends an individual to prison for many years.

When a child's liberty is at stake, the highest standard of proof has been applied. (*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068].) And the California Supreme Court has indicated that that same standard (proof beyond reasonable doubt) applies when two factors are present: First, a fundamental liberty is at stake; and second, the likelihood of "stigma" and loss of "good name" may result from the proceedings. (*People* v. *Burnick* (1975) 14 Cal.3d 306, 319-321 [121 Cal.Rptr. 488, 535 P.2d 352].) Manifestly, a fundamental liberty is at stake in a Civil Code section 232 proceeding. Manifestly, too, parent and child suffer from the stigma of a public trial. The abusive parent is stigmatized as a social pariah (as are criminals) for the act they are accused of performing is characterized as penal in nature and socially reprehensible. The child, on the other hand, is stigmatized by having his or her family taken away. If no adoption results, the child will have no family. Even if there is an adoption, the public will know that the child came from abusive parents with the embarrassment and shame that that entails. The "good name" of the child, like that of parents, will be tarnished. In addition, for the children involved in this case, four of whom are more than six years of age, the chances of adoption are poor at best. (See Wald, *State Intervention on Behalf of "Neglected" Children* (1976) 28 Stan.L. Rev. 625, 672.) The consequences are serious indeed.

The child and parent are not typically legal adversaries. The child has an interest in being protected from cruelty. At the same time, the child has a real interest in being protected from the severance of the familial relationship when the parent is innocent of wrongdoing as defined by the criminal code or by Civil Code section 232. Society, too, has an interest in not having innocent people so affected. The child and parents, as members of the same family, are tied together by that intricate and subtle relationship called the family. The state must act with caution and be very certain, indeed, that unusual and extreme circumstances exist before it acts. The majority seem to agree with my analysis but they answer the issue raised only in part. The majority agree that the standard must be a high one but they are satisfied with a "clear and convincing" standard.

This court has recently held that a preponderance of the evidence test must be applied at a dependency hearing, while recognizing that clear and convincing proof is required to take custody from a parent. (*In re Christopher B.* (1978) 82 Cal.App.3d 608, 616-618 [147 Cal.Rptr. 390]. See also, *In re Robert P.* (1976) 61 Cal.App.3d 310, 319 [132 Cal.Rptr. 5].) These cases are concerned with *temporary* loss of custody, I suggest that when we deal with a far more serious matter—the permanent severance of the familial relationship—the standard should be even higher. In my view proof beyond a reasonable doubt is required. When only a temporary breach in the integrity of the family unit is involved, a lesser standard is acceptable. It is when a sense of moral outrage is combined with a permanent loss of a fundamental liberty that the courts must require a finding "beyond a reasonable doubt" that such acts have been committed before the child can be declared free from parental control.

### III. *Conclusion*

The trial court declared the six minor children involved free of parental custody and control. With respect to the five oldest children, it ruled that the parents had failed, or were likely to fail, to provide proper care and control and to maintain an adequate parental relationship. The court further ruled that the return of the children would be detrimental to the five oldest children. With respect to the youngest child it declared the child free of parental control ruling that proof had been presented beyond a reasonable doubt that the return of the child would be detrimental to it and that the parents had failed and were likely to fail in the future to provide the proper care, control and adequate parental relationship. With respect to the five oldest children, the court ruled that there was a preponderance of evidence in support of its ruling.

The majority correctly rule that the preponderance of evidence test as applied to the five older children is incorrect. It properly remands the case. I concur in the remand. I dissent from the test the majority direct be applied on remand. The majority rule the test ought to be "clear and convincing" while I believe it ought to be "beyond a reasonable doubt." We all agreed the proper test was applied as to the youngest child.

The youngest child appears to have been caught in a situation of guilt by association for I find no evidence in the record of extreme neglect, even mere neglect of that child. He was only two months old when taken from his parents. I find no testimony in the record with respect to the

activity of the parents toward the child during the two months when they apparently had custody of him.

As indicated in the majority, the child does not come within the provisions of Civil Code section 232, subdivision (a)(7), since he had not been in the custody of the county for two or more years prior to the filing of this action. It was Civil Code section 232, subdivision (a)(2) which applied. The trial court correctly applied the standard of proof beyond reasonable doubt but incorrectly concluded, on this record, that the standard of proof was met and that parental custody should be terminated. Since I find no such evidence, I would rule that the trial court erred.