IN THE MATTER OF: CHRISTIE LYNN BALLARD

No. 8226DC1016

(Filed 6 September 1983)

**1. Parent and Child § 1— parental rights—termination for neglect**
    The evidence in a proceeding to terminate parental rights, including a prior order placing the child in the temporary custody of a county department of social services because of the mother's neglect of the child, was sufficient to support the court's order terminating the mother's parental rights under G.S. 7A-289.32(2) on the ground that she had neglected the child.

**2. Trial § 58— failure to make tendered findings**
    A trial court is required to make only those findings of fact necessary to support the judgment, and the court is not bound to find facts as proposed by a party even though there be competent evidence to support such findings.

**3. Parent and Child § 1— termination of parental rights—sufficient finding of jurisdiction**
    The trial court sufficiently found that it had jurisdiction of a proceeding to terminate parental rights under the provisions of G.S. 50A-3 where the court

In re Ballard

found "that it has jurisdiction to hear and decide this matter under the provisions of the Uniform Child Custody Jurisdiction Act."

Judge WELLS dissenting.

APPEAL by respondent from *Jones (William G.), Judge.* Order entered 22 June 1982 in District Court, MECKLENBURG County. Heard in the Court of Appeals 25 August 1983.

This is an action wherein the Mecklenburg County Department of Social Services petitioned for the termination of parental rights of Russell Carlton and Sandra Ballard Ard, the parents of Christie Lynn Ballard. The Department of Social Services (hereinafter DSS) assumed custody of Christie under a non-secure custody order on 3 December 1980. By an order entered 23 January 1981 the District Court adjudged Christie a neglected and dependent child. The trial court supported its order with specific findings of fact, including the following:

. . .

5. The mother is approximately 20 years old, has had no regular place to live since the birth of her child, and has always lived with other people.

. . .

7. The mother recently spoke to Ms. Bullins of putting the child in an orphange after Christmas, 1980. In June of 1980 the mother called the Department of Social Services and stated that she could not take care of the child and requested that said child either be placed in foster care or adopted. At the five-day hearing in this matter, held December 8, 1980, [the mother], prior to the hearing, indicated to Mrs. Johnson that she was not able at the present time to care for this child.

8. In prior conversations with Mrs. Johnson, [the mother] admitted that in the last two years she has been leaving her child with anyone who would take her; that in November, 1980, she left the child at Dot Simpson's house, knowing said house had no heat; that she has had no permanent place to live since the birth of the child; that she has not been regularly employed since the birth of the child.

9. [The mother] was informed by Mrs. Johnson as to the availability of AFDC aid and encouraged by Mrs. Johnson to apply for such aid. Mrs. Johnson told [the mother] that she would assist [her] in obtaining such aid provided that [she] contacted her. [The mother] never applied for such aid and consequently did not receive any AFDC funds in November, 1980.

10. There was very little clothing for the child when she was picked up at the Bullins' residence by Mrs. Johnson pursuant to an immediate custody order issued by this Court. Subsequently, DSS has had to issue an emergency clothing check to the mother in order to suitably clothe the child.

. . .

On 25 February 1981 the court ordered Sandra Ballard and DSS to enter into a parent/agency agreement. On 9 December 1981 DSS petitioned to terminate the parental rights of Russell Carlton and Sandra Ballard Ard. At a hearing on the petition the court made the following findings of fact and conclusions of law.

1. That Christie Lynn Ballard was born in Mecklenburg County on December 12, 1978, to Sandra Elaine Ballard and Russell Carlton, who were not married.

2. That shortly after the birth of the child, to wit in January, 1979, the Department of Social Services received a referral concerning the care which said child was receiving from her parents.

3. That additional referrals were received by the Department of Social Services; and in December of 1980 an immediate custody order was issued by this Court and the child was placed in the custody of the Department of Social Services.

4. That an adjudicatory hearing upon the petition alleging the child to be a neglected and dependent child was held by this Court on January 5, 1981, and extensive findings of fact were made by the Honorable Judge Walter H. Bennett, Jr., Judge Presiding; and that Judge Bennett found Christie Lynn Ballard to be a neglected child by virtue of the failure of the mother to properly care for said child; and that no ap-

peal from the decision of Judge Walter H. Bennett, Jr. was taken.

5. That subsequent to the child coming into the care of the Department of Social Services, the mother, Sandra Elaine Ballard, entered, on June 8, 1981, into a parent/agency agreement with the Department of Social Services pursuant to the order of February 25, 1981, in which, among other things, she agreed to pay support of $8.00 a week for the child, to maintain steady employment and a stable residence; but that subsequent to June 8, 1981 (the date of the agreement), the respondent has had and lost at least three separate part time jobs and has changed her residence six or seven times. Mrs. Ard was unable to work in January and February, 1982, because of medical problems.

6. That progress was made by Sandra Ard from time to time toward regaining custody of her child; and, in particular, progress became evident in July, 1981, when Sandra Ballard married Mr. Ard; but that in August, 1981, shortly after she was told that a temporary placement of Christie with her mother was going to be recommended by the Department of Social Services, Sandra Ard had a fight with her husband, went to Florida with another man and stayed there almost a month; and that again in February, 1982, Sandra Ard was advised by the Department of Social Services that because her situation had stabilized to a degree, a temporary placement would be recommended to begin on or about March 5, 1982; but that within a few days after being told that her child might be returned on a temporary basis, Sandra Ard again had a fight with her husband and left the residence of her in-laws and husband where she had been living since their marriage, and the placement of Christie with her was therefore never made.

7. That Christie Lynn Ballard has been in the custody of the Department of Social Services continuously since December of 1980 and the mother has worked from time to time and has paid absolutely no support for the child in the almost year and a half the child has been in the custody of the petitioner; and that neither has the respondent Russell Carlton paid any support whatever for the child, nor has he made any

contact with the Department of Social Services concerning the child's condition and well-being.

8. That the mother of said child, Sandra Ballard Ard, has throughout the life of this child evidenced a propensity to let other things come before the care and responsibility of her child; and this child has been in foster care almost a year and a half during her three and one-half years of life; and this child is in need of permanent placement and a stable home, which this court is convinced cannot be provided by either respondent, Russell Carlton or Sandra Elaine Ballard Ard.

9. That Russell Carlton, the biological father of said child, did not, prior to the filing of the petition herein, (a) marry the mother of said child, (b) establish paternity judicially or by registered affidavit, (c) legitimate the child, or petition to legitimate the child, nor (d) provide substantial financial support or consistent care with respect to said child and her mother.

10. That this Court adopts the findings and facts contained in the order of Judge Walter H. Bennett, Jr. dated January 23, 1981, and further adopts the conclusion of the Court that Sandra Elaine Ballard Ard neglected the child prior to her coming into the custody of the Department of Social Services.

11. That said child has resided in Mecklenburg County for her entire life, and this Court has determined that it has jurisdiction to hear and decide this matter under the provisions of the Uniform Child Custody Jurisdiction Act.

12. That based upon the foregoing, this Court concludes as a matter of law that grounds for termination of the parental rights of the mother, Sandra Elaine Ballard Ard, exist under the provisions of G.S. Sec. 7A-289.32(2) and (4); and with respect to Mr. Carlton under G.S. Sec. 7A(2), (4) and (6); and the Court further concludes that the best interests of Christie Lynn Ballard require that this Court terminate the parental rights of Sandra Elaine Ballard Ard and Russell Carlton with respect to said child.

From the order entered 22 June 1982 terminating her parental rights, respondent Sandra Ballard Ard appealed.

*Robert D. McDonnell as Guardian ad Litem for Christie Lynn Ballard, appellee.*

*Richard F. Harris, III for the respondent, appellant.*

*Ruff, Bond, Cobb, Wade & McNair, by Moses Luski and William H. McNair for the petitioner, appellee.*

HEDRICK, Judge.

[1] The trial court in a hearing on termination of parental rights is required to "take evidence, find the facts, and . . . adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7A-289.32. . . ." N.C. Gen. Stat. Sec. 7A-289.30(d). The trial court in this case concluded that circumstances existed under N.C. Gen. Stat. Sec. 7A-289.32(2), which identifies as a ground for termination a finding that "[t]he parent has abused or neglected the child." Respondent assigns error to this conclusion, asserting that it is not supported by the findings and the evidence.

The record indicates that DSS introduced the order of 23 January 1981 which contained the earlier court's conclusion that respondent had neglected Christie. Also introduced was the parent-agency agreement showing Mrs. Ard's agreement to pay support, maintain steady employment, and establish a stable residence. Laverne King, a DSS social worker, testified that Mrs. Ard had held various jobs, gone for periods of time without employment, and lived with several different friends for varying periods of time. Ms. King also testified that Mrs. Ard's living situation began to stabilize after she married Mr. Ard and moved in with his parents. Shortly after DSS told Mrs. Ard that it would recommend a trial placement of the child with her, however, she had an argument with her husband and left the Ard residence. She remained away from 22 August 1981 to 9 September 1981. Respondent again left her husband in February 1982, shortly after learning of a possible trial placement of the child with her, and remained absent for approximately one month.

Assuming *arguendo* that the order of 23 January 1981 did not itself establish grounds for termination of parental rights under N.C. Gen. Stat. Sec. 7A-289.32(2), we nevertheless find the court's conclusion adequately supported by the evidence. The

neglectful conduct forming the basis for that order occurred little more than a year prior to the filing of the petition for termination. Further, the evidence supports the findings of the trial court that Mrs. Ard was unsuccessful in establishing a stable living situation in the interim, and that she continued to evidence "a propensity to let other things come before the care and responsibility of her child." These findings provide ample basis for the court's conclusion that grounds for termination existed under N.C. Gen. Stat. Sec. 7A-289.32(2).

The respondent also contends that the court erred in concluding that grounds for termination existed under N.C. Gen. Stat. Sec. 7A-289.32(4). If a conclusion that grounds exist under any section of the statute is supported by findings of fact based on clear, cogent, and convincing evidence, the order terminating parental rights must be affirmed. *In re Moore*, 306 N.C. 394, 293 S.E. 2d 127 (1982). Because we have upheld the court's conclusion that grounds existed under N.C. Gen. Stat. Sec. 7A-289.32(2), it is unnecessary to discuss respondent's contention that grounds did not exist under N.C. Gen. Stat. Sec. 7A-289.32(4).

The respondent also assigns error to the trial court's use of the same file number for both the child neglect proceedings and the termination of parental rights petition. We find it unnecessary to address this assignment of error since the respondent failed to object at the trial proceedings and properly preserve the issue for appeal. North Carolina Rule of Appellate Procedure 10(b)(1); *see also*, 1 N.C. Index 3d, Appeal and Error Sec. 24. Furthermore, we fail to see how the respondent has been prejudiced in any way by the use of the same file number.

The respondent makes numerous assignments of error to individual findings of fact and challenges the competency and sufficiency of the evidence to support them. We have carefully reviewed the record and find all the trial judge's findings amply supported by the evidence.

[2] The respondent argues through her Assignment of Error Nos. 4 through 11 that the trial court erred by refusing to include in its order her findings of fact. We overrule these assignments of error for two reasons. First, a trial court is required to make only those findings of fact necessary to support the judgment. *In re Custody of Stancil*, 10 N.C. App. 545, 179 S.E. 2d 844 (1971). Sec-

In re Ballard

ond, a trial judge "is not bound to find facts as proposed by a party, even though there be competent evidence to support such a finding, and his rejection of the party's tendered finding of fact may not be reversed by the appellate court and is not ground for a new trial." *Branch Banking & Trust Co. v. Gill, State Treasurer,* 286 N.C. 342, 355, 211 S.E. 2d 327, 336 (1975).

[3] The respondent next assigns error to the adequacy of the trial court's finding of jurisdiction. She argues that the court failed to make a finding, as required by N.C. Gen. Stat. Sec. 7A-289.23, that it had jurisdiction under the provisions of N.C. Gen. Stat. Sec. 50A-3. The court did state in Finding of Fact No. 11 "that it has jurisdiction to hear and decide this matter under the provisions of the Uniform Child Custody Jurisdiction Act." This assignment of error borders on the frivolous.

Respondent's final two assignments of error relate to (1) the trial court's refusal to allow into evidence testimony that respondent's mother-in-law could help the mother in the same way as a parent aid and (2) the exclusion of portions of a letter from the executive director of the Family Support Center. The respondent cites no authority for her position, nor does she demonstrate any prejudice to her case. These assignments of error are overruled.

The order terminating the parental rights of the respondent is

Affirmed.

Judge PHILLIPS concurs.

Judge WELLS dissents.

Judge WELLS dissenting.

There being insufficient evidence presented of grounds to terminate the parental rights of respondent-appellant Sandra Ballard Ard, I must respectfully dissent.

The statute, G.S. 7A-289.32, provides in pertinent part, that parental rights may be terminated where:

. . .

(2) The parent has abused or neglected the child. . . .

(3) The parent has willfully left the child in foster care for more than two consecutive years without showing to the satisfaction of the court that substantial progress has been made within two years in correcting those conditions which led to the removal of the child for neglect, or without showing positive response within two years to the diligent efforts of a county department of social services, a child-caring institution or licensed child-placing agency to encourage the parent to strengthen the parental relationship to the child or to make and follow through with constructive planning for the future of the child.

(4) The child has been placed in the custody of a county department of social services, a licensed child-placing agency, or a child-caring institution and the parent, for a continuous period of six months next preceding the filing of the petition, has failed to pay a reasonable portion of the cost of care for the child.

It is clear that Ms. Ballard's daughter, Christie Lynn, has been in foster care for less than two years, and therefore termination may not be based on G.S. 7A-289.32(3). Further, there was insufficient evidence to terminate parental rights on the grounds of nonsupport under G.S. 7A-289.32(4). A finding that a parent has ability to pay support is essential to termination for nonsupport. *In re Clark,* 303 N.C. 592, 281 S.E. 2d 47 (1981). At the trial below, the judge made no finding of fact that Ms. Ard was able to contribute to her daughter's support.

The issue of termination of parental rights on the grounds of neglect requires more detailed discussion. There are two contexts in which the issue of parental neglect becomes important. First, neglect may be alleged as grounds for transferring temporary custody (non-secure custody order) from the parent to a social welfare organization under the provisions of G.S. 7A-576. Second, neglect is one of the three possible grounds discussed above for permanent termination of parental rights. A neglected child for purposes of either proceeding is

[a] juvenile who does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care or other remedial care recognized under State

---

In re Ballard

---

law, or who lives in an environment injurious to his welfare, or who has been placed for care or adoption in violation of law. G.S. 7A-517(21). *See In re Smith,* 56 N.C. App. 142, 287 S.E. 2d 440 (1982).

In the case at bar, the Mecklenburg County Department of Social Services (DSS), obtained temporary custody of Christie in January, 1981, based on a judicial finding that Christie was a neglected child within the meaning of G.S. 7A-517(21). Neglect was also found as a basis for termination of respondent-mother's parental rights at the hearing in June, 1982. The trial court purported to "adopt" the findings of fact and conclusion of neglect made in the 1980 custody hearing as evidence of neglect to support termination in the 1982 hearing.

The question before us therefore is what weight the judge in the termination hearing could properly accord the finding of neglect made in the temporary custody hearing a year earlier.

Clearly, the prior finding of neglect may not be the sole factor relied upon in a later termination hearing, for to do so would render the termination provisions in the statute meaningless. Further, the finding of neglect is only relevant for conditions up through December, 1980, when the non-secure hearing was held. *In the Matter of Chosa,* 290 N.W. 2d 766 (Minn. 1980); *In re Bender,* 170 Ind. App. 274, 352 N.E. 2d 797 (1976). The issue of a prior finding of neglect in a custody hearing used in a termination hearing arose in *In re Smith, supra,* but was not decided because the parties in that case stipulated that the finding could be judicially noticed in the termination proceeding. No such stipulation was made in the case at bar, however.[1]

Although there have been relatively few cases decided on this point, some courts considering the issue have held that a judge in a termination hearing must consider all evidence in the case, and make an independent finding of the existence of neglect as of the time of filing of the petition for termination of parental rights. *Chapman v. Chapman,* 96 Nev. 290, 607 P. 2d 1141 (1980);

---

1. Following recognition of the stipulation of the court's earlier finding of neglect, Judge Martin noted ". . . the court was correct in recognizing that this case could not be decided in a vacuum. The procedural and factual history of the case was relevant and necessary to a full and fair determination of the issues." *Id.*

*In the Matter of Chosa, supra; In re Terry D.,* 148 Cal. Rptr. 221, 83 Cal. App. 3d 890 (1978); *In the Matter of Mirelez,* 18 Wash. App. 790, 571 P. 2d 969 (1977); *In re Bender, supra.* Other courts have held that findings in a temporary custody proceeding may be judicially noticed by the court in a later termination hearing. *In re Interest of Adkins,* 298 N.W. 2d 273 (Iowa 1980); *In re Interest of Norwood,* 203 Neb. 201, 277 N.W. 2d 709 (1979); *In re Adoption of K,* 417 S.W. 2d 702 (Mo. Ct. App. 1967). These decisions do not state clearly what effect the taking of judicial notice has upon the evidence, but seem to indicate that the only issue to be considered in the termination hearing is whether neglect has occurred *after* the temporary custody proceeding.

The question of what effect the trial court's prior findings in a non-secure custody proceeding should have in the termination hearing is not confined to mere relevance, but must be examined in light of due process requirements. A petition for non-secure custody does not put the parent on notice of the threat of termination of parental rights. In a temporary custody hearing, the trial court is not faced with the same awesome responsibility involved in a parental rights termination case. This is not to say that temporary custody proceedings are not profound; but the orders flowing from them are only temporary; while in a termination proceeding a possible result is that the parent's rights will be forever terminated. I, therefore, am persuaded that the trial court, in order to afford due process in termination proceedings, must in every case make its own findings, based on evidence presented in support of the petition for termination, and must afford the parent the opportunity to refute or rebut all the evidence at the termination proceeding. Under my interpretation of what due process requires, the petitioner might offer into evidence the prior orders of the court, but such orders would constitute only some evidence of the issues tried previously, and would be subject to refutation or rebuttal. The record in this case makes it clear that Judge Jones took judicial notice of Judge Bennett's prior order, accepting his findings as conclusive and his conclusions as binding. This was error.

The judgment below should be reversed. First, the record shows that Judge Jones failed to make an independent finding of neglect based on all the evidence in the case, including events before and after the January, 1981 order placing custody of

Christie with DSS. Second, there was no showing of neglect following the custody order sufficient to meet the clear and convincing evidence test. *Santosky v. Kramer,* 455 U.S. 745, 71 L.Ed. 2d 599, 102 S.Ct. 1388 (1982); *In re Matter of Smith, supra.*

Courts have no power to terminate parental rights merely upon showing that a parent is a transient and has a troubled marriage. Not only are the standards of behavior used by the trial court in the case at bar suspect, but there is no showing in the record that Ms. Ard's nomadic lifestyle after January, 1981, in any way harmed her daughter, Christie. Indeed, where DSS has custody of a child, it will be difficult in many cases to prove evidence of neglect at all. Where a parent is not in physical control of a child, neglect in the form of failure to provide shelter, food, clothing or medical attention simply cannot occur. The issue of nonsupport is of course a different matter. *Accord, Chapman v. Chapman, supra* (neglect cannot be established "when a child is left by a parent in an environment where the child is known to be receiving proper care.") No one in the case at bar suggests that Christie received improper care from DSS or her foster family.

While there are ways in which neglect may be shown even when DSS has custody of a child, e.g., failure to maintain contact and affection with a child, *See In re Smith, supra, and In re APA,* 59 N.C. App. 322, 296 S.E. 2d 811 (1982), in this case there was ample evidence that respondent-mother maintained regular, loving contacts with her daughter during the entire time Christie was in foster care. On at least one occasion, Ms. Ard requested more visitation rights than DSS was willing to permit.

Petitioner-DSS' arguments about Ms. Ard's failure to change her lifestyle to a more stable, conventional routine are more properly addressed to a petition to terminate parental rights under G.S. 7A-289.32(3). Under that portion of the statute, parental rights may be terminated if a parent fails to show sufficient progress toward correcting conditions which led to the initial determination of neglect, after the child had been in DSS custody *for more than two years*. This portion of the statute is designed to encourage courts and social services organizations to permit a parent to "rehabilitate" himself or herself, with help and counseling from social service agencies. It also places a two-year limit, to permit termination of parental rights and possible adoption in cases where no progress is made. *See* Note, *Protecting Children*

*From Parents Who Provide Insufficient Care—Temporary and Permanent Statutory Limits on Parental Custody,* 1980 Ariz. St. L.J. 953, 969-73.

Because there was no finding of clear and convincing evidence of neglect based on all the facts up to the time of the 1982 termination petition, due process was not accorded the respondent-mother in this case and I respectfully dissent.