[Civ. No. 47401. Second Dist., Div. One. Mar. 30, 1976.]

RICHARD NOEL ANDERSON et al., Plaintiffs and Appellants, v. COUNTY OF SANTA BARBARA et al., Defendants and Respondents.

**COUNSEL**

Darryl Perlin and David Harrell for Plaintiffs and Appellants.

George P. Kading, County Counsel, and Dana D. Smith, Assistant County Counsel, Hatch & Parent and Ronald W. Cook for Defendants and Respondents.

## Opinion

**THOMPSON, J.**—This is an appeal from a summary judgment disallowing contestants' challenge to a referendum election approving a county ordinance rezoning coastal property to permit construction of oil and gas facilities. It raises issues of: (1) the applicability of the summary judgment procedure contained in Code of Civil Procedure section 437c to election contests filed pursuant to Elections Code section 20020 et seq.; (2) the constitutionality of Elections Code section 20023 which provides that if an election is contested upon the ground of "malconduct" of a member or members of a precinct board, the election shall not be set aside unless rejection of all the vote of that precinct will change the result in the remaining vote in the county; and (3) the definitions of a bribe or offer of consideration and of coercion to influence votes as those acts may be the basis for an election contest.

■ We conclude that because of an inherent inconsistency between the procedural requirements of Code of Civil Procedure section 437c dealing with summary judgment and the statutory scheme governing election contests, the summary judgment remedy is not available. Accordingly, we reverse a summary judgment granted by the trial court. ■ For the guidance of that court on remand, we note that Elections Code section 20023 is limited by constitutional guarantees of the right to vote so that it cannot be construed to validate state action denying, debasing or diluting that right. (*Hadley* v. *Junior College District* (1970) 397 U.S. 50, 52 [25 L.Ed.2d 45, 48, 90 S.Ct. 791].) We note further, for the guidance of the trial court, the distinction between an improper offer of reward and an improper effort at coercion on the one hand, and the exercise of freedom of speech with regard to an election on the other (*Canales* v. *City of Alviso* (1970) 3 Cal.3d 118, 131-133 [89 Cal.Rptr. 601, 474 P.2d 417]), and conclude that the statements to which contestants take exception are included within protected speech.

### Facts

On February 10, 1975, the Santa Barbara County Board of Supervisors adopted Ordinance No. 2686 rezoning approximately 1,500 acres in Corral and Las Flores Canyons, together with a 50-foot wide strip of land to the ocean to permit the development of a facilty to receive and process oil and gas that might be produced by Exxon Company, U.S.A., from offshore oil leases held by it. Petitions were filed with the Santa Barbara County Clerk requiring a referendum on the

action of the board of supervisors. Pursuant to Elections Code section 3753, a special election was held on May 27 to determine the referendum. The tabulated results of the election disclose 35,562 votes in favor of the rezoning, and 34,731 against, a winning margin of 831 out of 70,293 votes cast.

On June 9, the board of supervisors approved the canvass of the votes. On July 3, contestants filed the statement of contest of election which began the case at bench. Four grounds of contest are asserted by the statement.

It charges that the precinct boards of precincts 88, 89, 90, 91, and 92 were guilty of "malconduct" which "deterred" and "denied" voters in those precincts from casting ballots and discriminated against potential voters in those precincts by treating them differently from potential voters in other precincts. The statement claims that registered voters in precincts 88 through 92 were prevented from voting because they could not be identified as registered voters by reason of inadequate voters lists compiled in a fashion which prevented their use under the pressures of an election. It asserts, also, a failure to supply sample ballots and a designation of polling places to a large number of voters in the precincts and that the failure prevented many of those persons from voting because polling places had been changed from those of previous elections by consolidation of precincts, and precinct maps were not available at the polls. The statement claims that because of the deficiencies and because an average of 460 more voters were assigned to precincts 88 through 92 than to other precincts, long lines developed at the polls which, along with confusion at the polling places, caused potential voters to give up their right to vote. The statement then alleges that if the "voters who were forced to give up their right to vote" had been able to exercise their right, their votes would have changed the outcome of the election.

A second ground of contest alleges on information and belief that there were errors in canvassing the votes in all precincts in the county because ballots which should have been counted were disqualified. The second ground asks for a recount.

The third theory of contest alleges that Exxon improperly influenced the vote by public statements in forums and in the print and electronic media promising "$750,000.00 in new tax revenues" for the county as well as lower property taxes if the measure passed. It charges further

improper influence through the same media and in campaign literature by the promise of offers of employment if the rezoning was successful.

The fourth ground of contest asserts that Exxon, through its agent The Inland Alternative Committee, "intimidated" and "coerced" votes in favor of the proposition by threatening that, if it did not pass, the facilities of Exxon would be constructed off-shore with no safeguards to prevent substantial damage to the environment.

The conduct asserted in the third and fourth grounds is alleged to have changed the result of the vote.

On July 16 and 17, Exxon and the county filed demurrers, answers, and motions for summary judgment.

Declarations in support of the motions establish that the votes cast in precincts 88 through 92 were overwhelmingly against the proposition in ratios running from 20 to 1 against to over 40 to 1 against it. The declarations establish also that if all disqualified ballots are counted against the proposition, it still prevails. Finally, the declarations show that the statements asserted to constitute improper influence to vote in favor of the proposition were included in environmental impact data gathered by the county and in the official voter information pamphlet.

Points and authorities in support of the motions for summary judgment argue that Elections Code section 20023 provides that if an election is contested on the ground of malconduct of the precinct board, it will not be set aside if rejection of the entire vote of the precinct will not change the result of the election. Applying that section to precincts 88 through 92, the points and authorities compute a much greater margin of victory for the measure than the vote as canvassed. The points and authorities also argue that by reason of Elections Code section 20022, an election will not be set aside unless malconduct is such as to procure a result different from that which would have occurred without the irregularity or impropriety. Having thus first addressed the first two grounds of the contest, the points and authorities contend that the third and fourth grounds are untenable because the conduct asserted to constitute improper inducement and coercion is protected speech.

The trial court overruled the demurrers but granted the motions for summary judgment, thus in effect dismissing the contest and holding the

results of the election valid. This appeal followed.[1] Contestants argue: (1) the summary judgment procedure is inapplicable to election contests; (2) the declarations submitted in support of the motions are insufficient to sanction the action of the trial court; and (3) the trial court erred in denying contestants' request for findings of fact.

*Summary Judgment in Election Contest*

Code of Civil Procedure section 437c authorizes summary judgment in an action or proceeding where declarations supporting and against the motion disclose that there is no triable issue of fact. "The motion may be made at any time after 60 days has elapsed from the general appearance in the action or proceeding of each party against whom the motion is directed." (Code Civ. Proc., § 437c.) Elections Code section 20085 provides that "In the trial and determination of election contests, the court shall be governed by the rules of law and evidence governing the determination of questions of law and fact, so far as the same may be applicable. It may dismiss the proceedings if the statement of the cause of the contest is insufficient, or for want of prosecution."

While Elections Code section 20085 and related sections dealing with election contests are phrased in terms of candidate primary and general elections, they are applicable to noncandidate special elections. (*Canales* v. *City of Alviso, supra,* 3 Cal.3d 118, 129.) An election contest is a special proceeding. (*Dorsey* v. *Barry* (1864) 24 Cal. 449.) Thus, if the summary judgment process of Code of Civil Procedure section 437c is compatible with Elections Code section 20085, summary judgment is available in election contests. If the process is not compatible, then it is not available by reason of section 20085's language incorporating general rules only "so far as . . . applicable."

There is an inherent inconsistency between the summary judgment procedure of Code of Civil Procedure section 437c and the process of determination mandated by the Elections Code sections dealing with contests. The procedures for contest of an election (Elec. Code, § 20050 et seq.) are vestiges of those prevailing in 1850. They require that, except where the charge is bribery, the statement of contest must be filed within 30 days after declaration of result of the election (§ 20051), that within five days after the end of the period for filing statements of contest the

---

[1]The notice of appeal was prematurely filed, having preceded entry of the judgment.

county clerk notify the superior court of the county of all statements filed (§ 20080), and that the court designate a time and place of hearing on the notice not less than 10 nor more than 20 days from the time of the clerk's notice (§ 20080). The clerk must issue a citation to the defendant to appear which must be served at least five days prior to the date of hearing (§ 20081). Preserving the special session of court concept that prevailed in the 19th Century, the scheme requires that the court "continue in special session to hear and determine all issues arising in contested elections." (§ 20086.) The court is required to file its findings of fact and conclusions of law and to pronounce judgment within 10 days after the contest is submitted. (§ 20086.) While the court may "adjourn from day to day" until trial of the election contest is concluded, it may not grant continuances except for good cause, and then only for a time not exceeding 20 days. (§ 20083.)

Thus the statutory scheme governing election contests requires that trial commence no later than 45 days from the time that notice of the contest is filed with the county clerk. Nowhere in the time limit is there leeway for the pretrial skirmishing and motion practice that has become commonplace in today's traditional lawsuit. In stark contrast, Code of Civil Procedure section 437c prohibits a motion for summary judgment until 60 days from the date of a general appearance have expired. By the time the 60 days has run, the trial of the election contest must have been commenced and often will have been concluded. It is not possible to reconcile Code of Civil Procedure section 437c's limitation upon moving for a summary judgment with the time limitations upon commencement of trial of an election contest. Rather than infer a legislative intent to carve out an unstated exception to section 437c, we must construe that statute and Elections Code section 20085 together. Since section 20085 requires that general procedural rules pertain to election contests only if "applicable," the fair construction is that the Legislature intended, when it enacted Code of Civil Procedure section 437c, that its provisions were not available in election contests. (See *Packard* v. *Craig* (1896) 114 Cal. 95, 98 [45 P. 1033], holding that a motion for a new trial may not be made in an election contest.)

Our conclusion that the summary judgment is not available in an election contest compels reversal of the summary judgment in the case at bench.[2] We turn now to issues raised in this appeal which are likely to again arise on remand.

---

[2]We thus do not reach contestants' other contentions of trial court error in entering its judgment.

*Elections Code section 20023*

Elections Code section 20023 states: "When any election . . . is contested on account of any malconduct on the part of the precinct board of any precinct, or any member thereof, the election shall not be annulled or set aside upon any proof thereof, unless the rejection of the vote of that precinct would change the result as to that office in the remaining vote of the county." In the case at bench, contestants assert that the malconduct of the precinct boards in precincts where the registered voters were overwhelmingly against the rezoning precluded all those who wished to vote from voting, while the same inhibitions were not imposed in precincts where the registered voters were in favor of the measure, thus preventing the majority will of all registered voters of the county who wished to vote from being expressed. ▮▮▮ The trial court accepted the argument of Exxon and the county that if the charges of malconduct were true, then Elections Code section 20023 requires that the entire vote of the "against" precincts be excluded from the tally, thus increasing the majority by which the measure prevailed.

As so applied, section 20023 of the Elections Code violates constitutional standards of due process and equal protection.

▮▮▮ "[A] qualified voter has a constitutional right to vote in elections without having his vote wrongfully denied, debased, or diluted." (*Hadley* v. *Junior College District, supra,* 397 U.S. 50, 52 [25 L.Ed.2d 45, 49], quoted in *Canales* v. *City of Alviso, supra,* 3 Cal.3d 118, 130.) The United States Constitution precludes abridgement of that right by state action. (*Canales* v. *City of Alviso, supra,* 3 Cal.3d at p. 131.) ▮▮▮ Here the conduct alleged to have denied the right to vote to persons who wished to vote against the rezoning is state action. It is that of the precinct boards and election officials.

To apply Elections Code section 20023, as argued by Exxon and the county and as did the trial court on the motion for summary judgment, is to exacerbate rather than cure the denial of the constitutional right in the circumstances of the case at bench. Where, as here, the voting disposition of the electorate is divided geographically so that voters in some precincts show a pronounced tendency to vote differently than do voters in others, the effect of the denial of the vote to those who wish to exercise

their franchise in a precinct is not cured by refusing to count the votes of those who did cast a ballot in the precinct. It is as if the electorate were divided into Whigs and Tories, with the members of each party concentrated in specific precincts. A denial of the right of registered Whigs to vote is amplified in effect and not corrected by refusing to count the other votes in the Whig precincts.

Thus, while Elections Code section 20023 conceivably is an effective means of eliminating the effect of malconduct of election officials where the malconduct is such that its effect upon the election's outcome cannot be determined (see *Willburn* v. *Wixson* (1974) 37 Cal.App.3d 730 [112 Cal.Rptr. 620]), the section violates the constitutional guarantee of undiluted vote when applied in the manner argued by Exxon and the county.

### Freedom of Speech

The trial court correctly determined that the conduct alleged by contestants to be illegal inducement and coercion to vote in favor of the rezoning is not a valid basis for an election contest.

While Elections Code section 20021 must be construed to permit an election to be contested on the ground that its result was achieved by bribery or coercion "[a] countervailing limitation to the grounds upon which any election—candidate or issue—may be challenged is that fundamental First Amendment interests in full and free discussion may take precedence whenever they conflict with provisions of the Elections Code." (*Canales* v. *City of Alviso, supra,* 3 Cal.3d 118, 131.) Applying that standard, our Supreme Court in *Canales* held that election speeches indicating a bright future for government employment of persons in one community proposed to be annexed by another were "immunized" by the First Amendment so long as they fell short of "promises of employment conditioned on a certain vote." (3 Cal.3d at p. 131.)

Here the statements which contestants claim to be improper inducements or coercive are in the nature of the statements held protected by the First Amendment in *Canales.* They are general statements of a bright economic future if the rezoning is approved and of

unhappy consequences if it is not, but fall short of specific promises or threats conditioned on a certain vote.

### Disposition

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

Petitions for a rehearing were denied April 22, 1976, and the petitions of all the parties for a hearing by the Supreme Court were denied May 26, 1976.