[Civ. No. 24306. Fourth Dist., Div. One. Sept. 25, 1981.]

FEDOR DIACHENKO, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

Irwin Gostin for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Respondent.

OPINION

WORK, J.—Fedor Diachenko appeals a judgment dismissing his first amended complaint after an order sustaining demurrer without leave to amend.

## Background

Diachenko brings this action for himself and all others similarly situated against the State of California. His amended complaint alleges, among other things, both he and the class he seeks to represent are heirs of intestate decedents whose cash assets escheated and were deposited in the state's unclaimed property fund when they died without presently known heirs (see Prob. Code, § 231; Code Civ. Proc., § 1313). Pursuant to Code of Civil Procedure section 1355, each previously unknown heir successfully petitioned for a rightful share of these escheated funds, and obtained a court order awarding the unclaimed monies less any inheritance taxes properly due and owing. Before distribution, however, the State Controller deducted not only those inheritance taxes properly due but, in accordance with settled practice, additionally withheld "interest" on the taxes pursuant to Revenue and Taxation Code section 14211[1] and the California Administrative Code, title 18, section 14211—because the taxes were not paid within nine

---

[1] All references are to the Revenue and Taxation Code unless otherwise specified.

months of decedent's death. (See § 14103.) This additional withholding of "interest" forms the basis of the present dispute.

■    Although Diachenko challenges neither the state's ability to impose an inheritance tax, nor generally its right to charge "interest" on delinquent taxes, under the circumstances present here he claims the deduction of "interest" during that period the escheated monies were actually *held in the state's possession* and, consequently, available for its exclusive use and benefit, was unconstitutional. We treat the issue as one of first impression.

The state successfully demurred, arguing its imposition of "interest" on inheritance taxes more than nine months delinquent is authorized in all cases under both section 14211, *supra*,[2] and title 18 of the California Administrative Code, section 14211, *supra*,[3] as a part of a statutory scheme, neither discriminatory nor unfair. (See also §§ 14102 and 14103, *supra*.) It additionally contended Diachenko may not now contest the "interest" taken because he failed to litigate the question in his original probate proceeding to recover the escheated monies.[4] (See generally Prob. Code, § 1027; Code Civ. Proc., § 1355, *supra*.) The trial court sustained the demurrer without leave to amend on the ground the complaint failed to state facts sufficient to constitute a cause of action.

The state's right to levy an inheritance tax derives from section 13301 et seq., which provides, although inheritance tax is "due and payable at the date of the transferor's death" (§ 14102, *supra*), interest on it may be imposed only when the tax remains unpaid beyond the statutorily prescribed period of nine months (§§ 14103, 14211, *supra*).

The state's argument is straightforward: since inheritance taxes on the present funds were not paid within the statutorily prescribed time,

---

[2]Section 14211 reads in relevant part: "The tax does not bear interest if it is paid prior to the date on which it otherwise becomes delinquent. However, if it is paid after that date it bears interest at the rate of 12 percent per annum from the date it became delinquent and until it is paid . . . ."

[3]Administrative Code, title 18, section 14211 subdivision (a) reads: "Generally. Any tax imposed by the Inheritance Tax Law which becomes delinquent (see Section 14103) will bear interest from the delinquent date to the date the tax plus accrued interest is paid in full. Except as provided in Revenue and Taxation Code Section 14212 (see Section 14212), there is no relief from accrued interest for a late payment of the inheritance tax."

[4]What the state desires is not only a portion of Diachenko's pie and the plate upon which to eat it—but also, permission to return for a second helping.

the heir owes the taxes due plus interest on them accruing from the decedent's death. (See Cal. Admin. Code, *supra*, tit. 18, § 14211.) It recognizes no distinction between those cash assets already within its exclusive possession on which it is earning investment income, and those improperly withheld from it and to which it is deprived of the beneficial use.

## THE STATE MAY NOT CHARGE INTEREST ON UNPAID INHERITANCE TAXES FLOWING FROM ESCHEATED CASH ASSETS FOR THE PERIOD IT HAS SUCH MONIES UNDER ITS SOLE CONTROL.

■ In order to pass constitutional muster a statute must bear at least some rational relationship to a conceivably legitimate governmental purpose. (See *Spencer* v. *G. A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836, 854 [134 Cal.Rptr. 78]; see also *Thayer* v. *Madigan* (1975) 52 Cal.App.3d 16 [125 Cal.Rptr. 28].)

■ Thus, when a decedent dies *testate* and his property passes directly to his beneficiaries pursuant to a will instrument—unless the taxes owed by the beneficiaries are paid within the statutorily prescribed time the state suffers prejudice to the extent it would have had use of the taxes, and the charging of interest on unpaid monies is reasonably necessary to accomplish a legitimate governmental purpose. Accordingly, in such cases those sections providing for interest upon delinquent payments are both understandable and constitutional.

Where, on the other hand, as here, a decedent dies *intestate* and his heirs are unknown at the time of distribution this purpose disappears— as all estate assets are transferred immediately to the State Controller (Prob. Code, *supra*, § 231) who then deposits them into an unclaimed property fund (Code Civ. Proc., *supra*, § 1313) from which later discovered heirs may claim them during a period of five years (Code Civ. Proc., *supra*, § 1355) when, if none have come forward, the monies escheat permanently to the state (Code Civ. Proc., § 1351). Throughout the entire unclaimed period, the government retains absolute control and possession over the temporarily escheated assets, and cash assets are invested pursuant to Government Code section 13470,[5] the income

---

[5]Investment of these funds is mandatory. (Gov. Code, § 13470.) Since the state receives income from investing the *entire* cash assets of the estate, rather than just the portion due it as taxes, it receives a real boon where, as here, the estate consists solely of cash.

from which escheats *permanently* into the General Fund (see Code Civ. Proc., §§ 1318, 1347, 1392 and 1393). Under such circumstances, it is apparent the state is deprived of neither the beneficial use nor income from monies properly owed to it, and no rational purpose appears for requiring a newly discovered heir to pay "interest" on assets which were, at all times pertinent, under the government's absolute control generating income for it.

Even so, the state asserts imposing interest in this situation was not only contemplated by the Legislature, but is reasonably necessary as part of an overall statutory scheme whereby its cost of administering and maintaining temporarily escheated estates is reimbursed. Its proposition is unsound. First, nowhere within either the Inheritance Tax Law or section 14211 of the Administrative Code, *supra*, are temporarily escheated assets mentioned, and we have found no other evidence indicating such a legislative intent was in fact contemplated; and second, reimbursement for costs of administering and maintaining temporarily escheated *real* and *personal* property is specifically provided for from other sources in section 1325 of the Code of Civil Procedure.

It is a settled principle of statutory construction, "when a word or phrase has been given a particular scope or meaning in one part or portion of the law it shall be given the same scope and meaning in other parts or portions ...." (*Stillwell v. State Bar* (1946) 29 Cal.2d 119, 123 [173 P.2d 313].)

Accordingly, when section 1915 of the Civil Code defines "interest" as that "compensation allowed by law or fixed by the parties *for the use, or forbearance or detention of money*" (italics added), it is evident its imposition was not contemplated under these circumstances. (See *People* v. *Derby* (1960) 177 Cal.App.2d 626, 629-630 [2 Cal.Rptr. 401].) Where the government, at all times relevant, has retained for its *exclusive use* and benefit the assets upon which it is attempting to impose such interest—by definition, they have not been *used, forborne* or *detained* by any other party than the state.

Consequently, "interest" may not properly be charged on escheated cash assets described in Diachenko's complaint.[6]

---

[6] We observe, parenthetically, before enactment of the Inheritance Tax Law—June 25, 1931—the present problem did not exist because, at that time, property passing from a decedent to the state was deemed a taxable event, with the inheritance tax computed on the basis of a transfer from the decedent to a stranger; in the event the property was subsequently transferred to an heir nearer in relationship than a stranger,

DIACHENKO HAS NOT IMPERMISSIBLY SPLIT HIS CAUSE OF ACTION.

■ Contrary to the state's assessment, no cause of action arose with respect to its unlawful imposition of interest until after that interest was in fact withheld; and the present action is not foreclosed on the ground it was not addressed in Diachenko's original petition to establish heirship and to recover proceeds. The order in that matter simply states: "IT IS HEREBY ORDERED that the Controller of the State of California draw his warrant or warrants on the Treasurer of the State of California for the payment of the sum of $49,450.45, less any State Inheritance Tax which may be due, and that thereafter the payment of the balance of the funds be paid to FEDOR FEDOROVICH DIACHENKO and IRWIN GOSTIN, his attorney .... [¶] IT IS FURTHER ORDERED that a State Inheritance Tax Referee by [*sic*] appointed by the State Controller's Office, in accordance with their present practice, to compute the inheritance tax which is due."

From this innocuous order, however, the state contends Diachenko should have understood not only would inheritance taxes be deducted before final distribution but also "interest" on them under the provisions discussed above. Accordingly, it argues any dispute arising with respect to computation of the inheritance tax should have been brought at the original proceeding wherein his entitlement to the escheated funds was determined. "The rule against splitting a cause of action is based upon two reasons: (1) That the defendant should be protected against vexatious litigation; and (2) that it is against public policy to permit litigants to consume the time of the courts by relitigating matters already judicially determined, or by asserting claims which properly should have been settled in some prior action." (*Wulfjen* v. *Dolton* (1944) 24 Cal.2d 891, 894-895 [151 P.2d 840].)

Neither reason for invoking the rule applies here; litigation over the present controversy is not trivial, and there is no challenge to the order fixing *inheritance tax*, only to the *additional withholding of* $4,761.39 in *interest*, the levy of which he could not reasonably have foreseen before it was actually deducted. (See generally *Martinez-Ferrer* v.

---

a refund was then computed and made to the heir. (See § 14515; see also Cal. Admin. Code, tit. 18, §§ 14501-14515.) Since June 1935, however, no taxable transfer is deemed to have occurred until the escheated property is actually delivered to an heir entitled to it (§ 14515, *supra*), giving rise to the state's current understandable, albeit incorrect, interpretation.

*Richardson-Merrell, Inc.* (1980) 105 Cal.App.3d 316 [164 Cal.Rptr. 591].)

*Motion to Certify the Matter as a Class Action*

In the clerk's minutes sustaining the state's demurrer without leave to amend the court also denied the motion to certify the present cause as a class action "because of [its] ruling on [the] demurrer." Although the parties argue the issue on appeal and we see no legitimate reason for denying certification (see Code Civ. Proc., § 382; *Bozaich* v. *State of California* (1973) 32 Cal.App.3d 688, 694 [108 Cal.Rptr. 392]; *Lattin* v. *Franchise Tax Board* (1977) 75 Cal.App.3d 377 [142 Cal.Rptr. 130]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]), the question should be determined on its merits in the trial court.

*Disposition*

The judgment of dismissal is reversed and the matter remanded for further proceedings, including determination of the merits of the motion to certify as a class action.

Brown, (Gerald), P. J., and Malkus, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.