TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---------------------------
                              :
    OPINION                   :
                              :
        of                    :    No. 87-1208
                              :
JOHN K. VAN DE KAMP           :    APRIL 21, 1988
  Attorney General            :
                              :
ANTHONY S. DaVIGO             :
Deputy Attorney General       :
                              :
    ------------------------------------------------------------


THE HONORABLE DAVID ROBERTI, PRESIDENT PRO TEMPORE OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

Is a District Agricultural Association required as a condition of operating a satellite wagering facility, to enter into a written contract with the bona fide labor organization which has historically represented the same or similar classifications of employees at the nearest horseracing meeting?

CONCLUSION

A District Agricultural Association is required, as a condition of operating a satellite wagering facility, to enter into a written contract for the representation of one or more classifications of employees assigned to the facility, with each bona fide labor organization which has historically represented the same or similar classifications at the nearest horseracing meeting, provided that permanent state employees who have historically performed certain services at the district agricultural association fair prior to the establishment of the facility may continue to provide those services, and provided that such contract is not inconsistent with article VII of the California Constitution pertaining to the state civil service.

ANALYSIS

Under specified terms and conditions, and subject to specified limitations, the California Horse Racing Board may, with the approval of the Department of Food and Agriculture, authorize a District Agricultural Association (DAA) to operate a satellite wagering facility (SWF). (§ 19596.5, 19596.6, & 19596.7.)[1] Section 19596.6, subdivision (a), provides:

"Notwithstanding any other provision of law, subject to the conditions and limitations set forth in this section and Section 19596.7, the following entities in the central or southern zone are eligible to be licensed to operate a satellite wagering facility for wagering on races conducted in the central or southern zone:

"(1) Any county fair, district agricultural association fair, or citrus fruit fair which conducted general fair activities in 1986 within the central or southern zone, and which is eligible for an allocation of racing days pursuant to Section 19549, but which is not licensed to conduct a racing meeting, may locate a satellite wagering facility at its fairgrounds.

"(2) Any association licensed to conduct a racing meeting in the central or southern zone."

We are advised that the DAA in question has been authorized to establish a SWF on its fairgrounds.[2] The present inquiry concerns those personnel employed by DAA to provide services in connection with the SWF. Specifically, we are asked whether a DAA is required, as a condition of operating such a SWF, to enter into a written contract with the bona fide labor organization which has historically represented the same or similar classifications of employees at the nearest racing meeting. Section 19596.14 (Stats. 1987, ch. 1273, § 7.3) provides:

"A satellite wagering facility, an organization established pursuant to subdivision (c) of Section 19596.4,[3] or any of their subcontractors or entities

---

[1]These sections of the Business and Professions Code, to which all unidentified sections herein refer, were added or amended by the Statutes of 1987, chapter 1273, sections 5, 6, and 7 respectively.

[2]We understand that the principal function of parimutuel wagering would be operated by a private racing association, and the DAA would provide support services including security, custodial, clerical, parking attendants, and cashiers (non-parimutuel).

[3]An organization established pursuant to section 19596.4, subdivision (c), is established by associations and fairs providing audiovisual signals of their racing programs, to operate the audiovisual signal system.

under contract to perform any of the functions specified in Sections 19596.4, 19596.5, and 19596.6 shall, as a condition of operating, enter into a written contractual agreement with the bona fide labor organization which has historically represented the same or similar classifications of employees at the nearest horseracing meeting. Permanent state or county employees and nonprofit organizations who have historically performed certain services at county, state, or agricultural district fairs may continue to provide those services notwithstanding this section."

The first four words of this section refer literally to the physical plant which is not independently capable of entering into the contract in question. Rather, the nature of the contract, being a labor agreement, suggests that it would be entered into by the operator or operators referred to in section 19596.6, supra, whose employees manage and maintain the facility. Under that section, a SWF may be operated by (1) a designated county, DAA, or citrus fruit fair, or (2) an association licensed to conduct a racing meeting. Nothing in this scheme would preclude a SWF from being operated by one or more operators in combination. The present inquiry involves the operation of a SWF, exclusively or in part, by a DAA. Again, we are concerned only with those personnel hired or assigned by the DAA in connection with a SWF. Nothing in section 19596.14 suggests that the contract would cover DAA employees other than those hired to operate the SWF; the statute refers expressly and exclusively to the SWF as distinguished from the traditional fair as a whole.

Further, while the statute requires an agreement in connection with the SWF, it does not further identify the subject matter, in terms of what classes, positions, or employees would be covered, except by reference to "the same or similar classifications of employees at the nearest horseracing meeting" who were "historically represented" by a bona fide labor organization. Manifestly, this may involve more than one such organization and thus more than one such agreement. Hence, it appears from the first sentence of section 19596.14, standing alone, that those hired by a DAA in connection with its operation of a SWF, within classifications which are the same or similar to those historically represented by a bona fide labor organization at the nearest horseracing meeting, would be represented by that labor organization or organizations.

The second sentence provides that permanent state or county employees who have historically performed certain services at DAA fairs may continue to provide those services. While the word "permanent" is not defined, it is well established that when a word or phrase has been given a particular scope or meaning in one part or portion of the law, it shall be given the same scope and meaning in other parts or portions. (Stillwell v. State Bar (1946) 29 Cal.2d 119, 123; Diachenko v. State of California (1981) 123 Cal.App.3d 932, 938.) Hence, the word "permanent" as used in relationship to state or county employees has the same scope and meaning as it does in the laws pertaining to those employees respectively. In the State Civil Service Act, a "permanent" employee is one who is lawfully retained in his position after the completion of the probationary period prescribed by law. (Gov. Code, § 18528.)[4] Government Code section 19171 provides:

---

[4]The minimum probationary period is six months, and the maximum one year. (Gov. Code, § 19170.)

"The service of a probationary period is required under the following circumstances:  (a) when an employee enters or is promoted in the state civil service by permanent appointment from an employment list, (b) upon reinstatement after a break in continuity of service resulting from a permanent separation, or (c) after any other type of appointment situation not specifically excepted from the probationary period requirement by statute or by board rule."  (Emphases added.)

Under this section, a probationary period is required in the case of full-time[5] as well as part-time[6] and intermittent[7] appointments.  All of these are permanent positions without durational limitation.

On the other hand, article VII, section 5, of the California Constitution provides for a temporary appointment:

"A temporary appointment may be made to a position for which there is no employment list.  No person may serve in one or more positions under temporary appointment longer than 9 months in 12 consecutive months."

Thus, a temporary appointment of not more than nine months may be made in the absence of an appropriate employment list.  (Gov. Code, §§ 18529 and 19058.)  A temporary appointee acquires no probationary or permanent status or rights.  (Gov. Code, § 19059.)

A "limited term employee" is one whose appointment from an employment list shall not, in itself or in combination with another such appointment, exceed a period of one or, under specified circumstances, two years.  (Gov. Code, §§ 18530, 19080.3.)  No time served in a limited term appointment, which may be terminated by oral or written notice, may count toward acquiring permanent status in any position.  (Gov. Code, § 19083; C.C.R., tit. 2, §§ 281 and 282.)

Finally, an "emergency employee" is one whose appointment is made for a period not to exceed 60 working days either during an actual emergency to prevent the stoppage of public business or because of the limited duration of the work.  (Gov. Code, §§ 18531, 19888.1.)  Hence, a temporary appointee, a limited term appointee, and an emergency appointee are not permanent

---

[5]  "A 'full-time' position or appointment is a position or appointment in which the employee is to work the amount of time required for the employee to be compensated at a full-time rate."  (Gov. Code, § 18550.)

[6]  "A 'part-time' position or appointment is a position or appointment in which the employee is to work a specific fraction of the full-time work schedule."  (Gov. Code, § 18551.)

[7]  "An 'intermittent' position or appointment is a position or appointment in which the employee is to work periodically or for a fluctuating portion of the full-time work schedule."  (Gov. Code, § 18552.)

employees and therefore do not fall within the exception provided in the second sentence of section 19596.14.

An issue remains with respect to permanent employees in those classes of service historically performed at the fair, which are also the same or similar to classifications historically represented by a bona fide labor organization at the nearest horseracing meeting, who are hired directly into positions assigned to the SWF. Does the second sentence of section 19596.14 refer to any permanent employee, whether hired before or after the establishment of a SWF, who performs services historically performed at the fair? Such an interpretation has the apparent advantage of precluding the bifurcation, for purposes of representation, of employees of the same employer within the same class.

Nevertheless, the second sentence must, in our view, be read as a grandfather clause pertaining only to employees whose positions became permanent prior to the establishment of the SWF, so that all employees thereafter hired to operate the SWF would be subject to the new contract. First, this view comports with the literal import of the statutory terms. The sentence refers to "employees . . . who have historically performed certain services at . . . agricultural district fairs." Obviously, employees initially hired to operate the SWF do not fall within that category. Second, our determination is consistent with the interpretive rule that exceptions should be narrowly construed. (Lacabanne Properties, Inc. v. Dept. Alcoholic Bev. Cont. (1968) 261 Cal.App.2d 181, 189; 70 Ops.Cal.Atty.Gen. 244, 246 (1987).)

Finally, while the DAA is required to enter into a written contractual agreement with a bona fide labor organization, the nature and terms of the agreement are subject to certain constitutional prerequisites pertaining to the state civil service. In this regard, a DAA is a "state institution" (Food & Agr. Code, § 3953) and is governed by state officers (Food & Agr. Code, § 3962) appointed by the Governor (Food & Agr. Code, § 3959). The associations are funded by the state and are subject to the control of various departments of the state. (56 Ops.Cal.Atty.Gen. 210, 214 (1973).) As a state institution, each association is considered to be a "public agency of the state." (See Sixth District Agricultural Association v. Wright (1908) 154 Cal. 119, 128; 62 Ops.Cal.Atty.Gen. 136, 137 (1979).) The permanent employees in question are members of the state civil service.

California Constitution, article VII, section 1, subdivision (a), provides:

"The civil service includes every officer and employee of the state except as otherwise provided in this Constitution."

Section 4 of article VII provides:

"The following are exempt from civil service:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(l) Officers and employees of district agricultural associations employed less than 6 months in a calendar year.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Permanent DAA employees, including full-time, part-time, and intermittents employed more than six months in a calendar year, are not exempt from the civil service. Nor does the Legislature have the authority to create additional exemptions. In 65 Ops.Cal.Atty.Gen. 475, 479-480 (1982) we explained:

"The Legislature simply does not have the authority to exempt clerical personnel . . . from constitutional civil service requirements. The exemptions from civil service provided in the Constitution are exclusive. This point was made exceedingly clear to the voters in the 1934 General Election. The 'Argument in Favor of Initiative Proposition No. 7' expressly provided:

"'The Legislature is prohibited from exempting any group from the merit system of employment. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"'To sum up, this constitutional amendment provides: . . . (3) prohibition against exemptions from the merit system of employment; . . .' (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 6, 1934), p. 12.)

"The reason for this prohibition can be ascertained from the following statement by the Constitutional Revision Commission:

"'The first question discussed in considering article XXIV [8] was whether the matters treated in the article, and particularly the enumeration of exemptions in Section 4, ought to be retained in the Constitution. It was concluded that California has one of the best civil service systems in the nation and that constitutional treatment of the basic elements of the system is essential to insure continuance of its high quality. It was recognized, for example, that the alternative of placing the entire exemption power with the Legislature would submit the legislators to unduly severe pressures to carve out various exceptions to the application of civil service laws and that much strain on the integrity and efficacy of the civil service system could result.' (Cal. Const. Revision Com., Proposed Revision (1966), p. 109.) (Emphasis added.)

_____

[8]At the primary election of June 8, 1976, article XXIV of the California Constitution was renumbered article VII. (See 63 Ops.Cal.Atty.Gen. 24, 31, n. 4.)

"Accordingly, even if the Legislature intended . . . to exempt clerical employees of area boards from civil service, such an action would be in excess of its authority and violative of the Constitution."

(See also 70 Ops.Cal.Atty.Gen. 139, 143 (1987); 61 Ops.Cal.Atty.Gen. 68, 71-72 (1978); 56 Ops.Cal.Atty.Gen. 353, 356-357 (1973).

State employee representation is regulated generally under the comprehensive provisions of the state Employer-Employee Relations Act. (Gov. Code, § 3512 et seq.) Under that Act, state employees have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations; they also have the right to refuse to join or participate in such activities. (Gov. Code, §§ 3512, 3515.)[9]

Insofar as section 19596.14 designates as an employee representative a certainly ascertainable labor organization or organizations, it constitutes an exception to the Act. It is generally stated that where the same subject matter is covered by inconsistent provisions, one of which is special and the other general, the special is an exception to the general and controls unless an intent to the contrary clearly appears; further, where the special is later, it will be regarded as an exception to the prior general. (American Friends Service Com. v. Procunier (1973) 33 Cal.App.3d 252, 263; and 65 Ops.Cal.Atty.Gen. 512, 513 (1982).)

---

[9]Section 3512 provides:

"It is the purpose of this chapter to . . . promote the improvement of personnel management and employer-employee relations within the State of California by providing a uniform basis for recognizing the right of state employees to join organizations of their own choosing and be represented by those organizations in their employment relations with the state. It is further the purpose of this chapter, in order to foster peaceful employer-employee relations, to allow state employees to select one employee organization as the exclusive representative of the employees in an appropriate unit, . . . ."

Section 3515 provides:

"Except as otherwise provided by the Legislature, state employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations. State employees also shall have the right to refuse to join or participate in the activities of employee organizations, . . . ."

(See also § 3527.) The Legislature has otherwise provided with respect to managerial and confidential employees (§ 3513, subd. (c) and supervisory employees (§ 3522).

While it does not fall within the scope of this opinion to reconcile or resolve every conceivable inconsistency between the undefined power to contract as provided in section 19596.14, and the comprehensive provisions of the Act[10] and of the State Civil Service Act commencing with Government Code section 18500, it is clear that such power may not be exercised in derogation of article VII of the California Constitution.  By way of example, section 1, subdivision (b), of that article provides:

"In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination."

Section 3, subdivision (a), provides:

"The board shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions."

However, we perceive no reason why a contract with a bona fide labor organization could not contain provisions which comply with constitutional specifications.  Nothing in the power to contract as provided in section 19596.14 suggests an inherent constitutional conflict.

It is concluded that a DAA is required, as a condition of operating a SWF, to enter into a written contract for the representation of one or more classifications of employees assigned to the facility, with each bona fide labor organization which has historically represented the same or similar classifications at the nearest horseracing meeting, provided that permanent state employees who have historically performed certain services at the district agricultural association fair prior to the establishment of the facility may continue to provide those services, and provided that such contract is not inconsistent with article VII of the California Constitution pertaining to the state civil service.

* * * * *

---

[10]Compare, for example, the provisions of the Act pertaining to the option of individual employees to join (Gov. Code, § 3515), the scope of representation (Gov. Code, § 3516), legislative approval of salaries (Gov. Code, § 3517.6), mediation (Gov. Code, § 3518) and decertification (Gov. Code, § 3520.5).